STATE BOARD TAX COMMISSIONERS *v.* INTERNATIONAL
BUSINESS COLLEGE, INC.

[No. 967A69. Filed September 29, 1969. Rehearing denied November 20, 1969. Transfer denied February 16, 1970. Petition to reconsider transfer denied May 14, 1970.]

*Theodore L. Sendak,* Attorney General, *Lloyd C. Hutchinson* and *James B. Droege,* Deputies Attorney General, for appellant State Board of Tax Commissioners and *George P. Mallers,* County Attorney of Allen County for appellant County Officers of Allen County.

*John H. Heiney, Rothberg, Gallmeyer, Fruechtenicht & Logan,* of Fort Wayne, for appellee.

SULLIVAN, J.—This cause was brought by plaintiff-appellee, International Business College, Inc. (hereinfater referred to as International), in the Allen Superior Court to reverse a determination by the State Board of Tax Commissioners which denied appellee any exemption from real and personal property taxes for 1964. The trial court reversed and ordered the board to grant the exemption. Appellants assign as error the overruling of their motion for new trial, which motion, in substance, asserts that the findings and conclusions and the decision of the court are not sustained by sufficient evidence, and are contrary to law, and that the conclusions of law are not sustained by the findings of fact.

International is a corporation organized for-profit under the laws of the State of Indiana. It engages solely in providing education to students who have completed their high school training. The courses of instruction offered include mathematics, English, typing, shorthand, bookkeeping and data processing. Each course of instruction is taught by instructors utilizing standards of performance and text books generally accepted throughout the United States by colleges, universities and other business colleges.

International claims as exempt seventy-five percent of the real estate, together with the building located thereon which contains class room facilities and administrative offices. Twenty-five percent of such real estate and improvement was admittedly taxable because leased to commercial tenants. Separate real estate and the building located thereon used as a dormitory for students are claimed as one hundred percent exempt.

The first issue presented for decision is whether the fact that International was organized as a for-profit corporation should, in itself, constitute a disqualification from property tax exemption. Appellants do not argue that International is not entitled to an exemption in that it operates a business college as opposed to a general educational institution,[1] and we do not, therefore, address ourselves to any possible disqualification except that of the profit status of appellee.

Article 10, Section 1 of the Indiana Constitution provides as follows:

> "The General Assembly shall provide, by law, for a uniform and equal rate of assessment and taxation; and shall prescribe such regulations as shall secure a just valuation for taxation of all property, both real and personal, excepting such only for municipal, educational, literary, scientific, religious, or charitable purposes, as may be specially exempted by law."

Pursuant to this authority the legislature enacted the Acts of 1919, ch. 59, § 5, as amended and as found in Burns' Indiana Statutes Anno. (1969 Supp.), § 64-201 (Fifth), which is

---

[1] The very case relied upon most strongly by appellants, *Lawrence Business College* v. *Bussing* (1925), 117 Kan. 436, 231 P. 1039, states that business or commercial colleges are "educational institutions" within the meaning of tax exemption provisions. See also, *Wilson's Modern Business College* v. *King County* (1940), 4 Wash. 2d 636, 104 P. 2d 580. Compare *City of Detroit* v. *Detroit Commercial College* (1948), 322 Mich. 142, 33 N. W. 2d 737; *Webb Academy* v. *City of Grand Rapids* (1920), 209 Mich. 523, 177 N. W. 290; *Kendall Memorial School* v. *City of Grand Rapids* (1968), 11 Mich. App. 231, 160 N. W. 2d 778.

an exemption statute for real and personal property,[2] the applicable provisions of which read as follows:

"The following property shall be exempt from taxation:

\* \* \*

"Fifth. Every building, or part thereof, used and set apart for educational[,] literary, scientific, religious or charitable purposes by any institution or by any individual or individuals, association or corporation, provided the same is owned and actually occupied by the institution, individual, association or corporation using it for such purpose or purposes, and every building owned and occupied, used and set apart, for educational, literary, scientific, fraternal or charitable purposes by any town, township, city or county, and the tract of land on which such building is situate, including the campus and athletic grounds of any educational institution not exceeding fifty [50] acres; also the lands purchased with the bona fide intention of erecting buildings for such use thereon, not exceeding forty [40] acres; also the personal property, endowment funds, and interest thereon, belonging to any such institution or any town, township, city or county and connected with, used or set apart for any of the purposes aforesaid."

However, the quoted exemption provision is limited by Acts of 1919, ch. 59, § 6, as found in Burns' Indiana Statutes Anno., (1961 Repl.), § 64-202, as follows:

"If all or any part, parcel or portion of any tract or lot of land or any buildings or personal property enumerated in the preceding sections as exempt from taxation shall be used or occupied for any other purpose or purposes than those recited in said section by reason whereof they are exempted from taxation, such property, part, parcel or portion shall be subject to taxation so long as the same shall not be set aside or used exclusively for some one of the purposes specified in said enumeration."

Applying these provisions to the cause before us it is apparent that they exempt every building used for educational purposes by any institution or by any individual or individuals, association or incorporation, together with the land upon

---

[2] Beginning in 1852, substantially similar exemption statutes were, from time to time, enacted. 1 R. S. 1852, page 106.

which such building is located, but that they impose a limitation by excluding from the exempt status any property used or occupied for any other purpose or purposes than those recited. Such language does not indicate a legislative intent that corporate property, otherwise exempt because exclusively used for educational purposes, should lose the exempt status solely because the corporation earns a profit.

The language of Burns' § 64-201 (Fifth), *supra,* is clear and unambiguous. It grants the exemption to *any* individual, individuals, association or *incorporation* which otherwise qualifies. It does not differentiate between associations and corporations which are not-for-profit or are charitable as opposed to those associations or corporations operating for profit.

In *City of Indianapolis* v. *Sturdevant* (1865), 24 Ind. 391, the tax exemption question concerning profit as related to an educational institution was judicially treated directly for the first time.[3] The exemption was upheld and the court there stated:

> "* * * The evident intention of the clause of the constitution above quoted, was to leave the legislature at liberty to encourage the establishment of institutions of learning, by exempting them from the usual burden of taxation, *whether the enterprise might be undertaken on public or private account* * * *." (Emphasis supplied) 24 Ind. 391 at 393.

The court further stated that in its opinion the 1861 General Assembly, by adding the words, "by any individual or individuals, association or corporation," to the 1852 exemption statute, made it clear that the fact that the institution was conducted on private account and that the earnings of it were applied to the personal benefit of the proprietor does not militate against the exemption. See also *Pitcher* v. *Miss Wolcott*

---

[3] In *Common Council of Indianapolis* v. *McLean* (1856), 8 Ind. 328, a private school was held not exempt as a literary or scientific institution. This decision, however, was distinguished and questioned by *City of Indianapolis* v. *Sturdevant, supra.*

*School Assoc.* (1917), 63 Colo. 294, 165 P. 608; *Harrison County* v. *Gulf Coast Military Academy* (1921), 126 Miss. 729, 89 S. 617; *M. G. Rohrbough* v. *Douglas County* (1906), 76 Neb. 679; 107 N. W. 1000; *Englewood School* v. *Chamberlain* (1893), 55 N. J. L. 292, 26 A. 913; *State ex rel. Corporation Comm'n* v. *Oxford Seminary Construction Co.* (1912), 160 N. C. 582, 76 S. E. 640; *Tulsa County* v. *Tulsa Business College* (1931), 150 Okla. 197, 1 P. 2d 351; and, *Ward Seminary* v. *Nashville* (1913), 129 Tenn. 412, 167 S. W. 113.

The same question was later presented in *Vink, County Treasurer* v. *Work* (1902), 158 Ind. 638, 64 N. E. 83, wherein the court sustained an exemption for a private home and school for orphans and indigent children. The appellee there was the sole owner of the school and was paid by municipalities, charitable bodies and others for keeping and educating the children. The court there said at page 640:

> "* * * Neither does the circumstance that the maintenance of the school or home is a private enterprise, and that compensation is made to the appellee for keeping, caring for, teaching, and maintaining the indigent and homeless orphans who are placed in her charge, deprive the appellee of the right to exemption from taxation * * *. It will be observed that the act applies to individuals as well as to private and public corporations, and that the only conditions are that the property shall be used and set apart for educational or charitable purposes."

Notwithstanding the law as set forth in the two cases above-quoted, it is appellants' contention that "by excusing the duty to pay taxes the state confers a financial benefit upon the exempt corporation, the effect of which is the same as if a direct grant were made. The costs of government not borne by that corporation must be made up by larger payments by other taxpayers." The delicate task of balancing the considerations here involved was aptly acknowledged in *Faculty-Student Assoc. of Harpur College* v. *Dawson* (1967), 292 N. Y. S. 2d 216 at 228, as follows:

"The court is mindful of the conflict between the policy of having all realty bear an equal share of the cost of public services and the policy of encouraging and fostering certain corporations and associations which are considered to bestow on the public a greater benefit, the advancement of man's knowledge, as well as the pressing need for tax money. The court is also aware that the petitioner has the burden of establishing that it is so organized and conducted as to justify the granting of this exemption, and the court should not construe the statute or the certificate of incorporation so literally as to defeat the established purpose of fostering education."

The conflict has been largely resolved in Alaska in that the constitution and statutes of that state exempt only non-profit purposes. In *Matanuska-Susitna Borough* v. *King's Lake Camp* (Alaska 1968), 439 P. 2d 441, it was held, however, that the exemption is not lost where income is not derived as a result of a dominant profit motive but rather as an incident to the accomplishment of the charitable or other exempt purpose.

The record is silent in our case as to any subjective motivations or as to any objective indications of such motivations. We cannot judicially impart any particular motive to the officers, directors or shareholders of International. We cannot, as a matter of law, state that the profit factor is any more predominent than the desire to provide a needed educational function not otherwise provided, which function incidentally affords a source of income and livelihood to those providing it.

Appellants argue that their position is supported by *Lawrence Business College* v. *Bussing* (1925), 117 Kan. 436, 231 P. 1039, which refused an exemption under similar circumstances. It is important to note, however, that the Kansas Supreme Court expressly noted that the Indiana law is contrary to the position there taken and more specifically that *City of Indianapolis* v. *Sturdevant, supra,* fully covered the situation and is directly in point, although contra. Appellants also rely on *Coppock* v. *Blount* (Fla. 1962), 145 So. 2d 279, wherein an exemption was denied to plaintiffs as individuals

and owners of property leased to a corporation which operated a private school thereon. The Florida statute there applicable required ownership of the property by the institution using it. Clearly, plaintiffs in the *Coppock* case did not qualify as owner, occupant *and* user. Said case is therefore directly analogous to *Travelers Insurance Co.* v. *Kent* (1898), 151 Ind. 349, 50 N. E. 562, wherein an exemption was denied upon grounds that the applicant was a lessor but in which the court reaffirmed the holding in *City of Indianapolis* v. *Sturdevant, supra.* It is apparent that neither *Travelers Insurance Co.* v. *Kent, supra,* nor *Coppock* v. *Blount, supra,* are applicable to the facts here presented.

We are not unmindful of the policy considerations which have prompted many jurisdictions to alter the application of tax exemption statutes by construing them more stringently in favor of the taxing authority. As a matter of fact, it has long been held by our Supreme Court and by this court that statutes exempting property from taxation are not favored and are therefore strictly construed. *City of Indianapolis* v. *Grand Master of Grand Lodge* (1865), 25 Ind. 518; *Oak Hill Cemetery Co.* v. *Wells* (1906), 38 Ind. App. 479, 78 N. E. 350. Our recent opinions in *State Board of Tax Commissioners* v. *Trustees of Adoniram Lodge* (Sept. 17, 1969), 145 Ind. App. 300, 250 N. E. 2d 605; *State Board of Tax Commissioners* v. *Warner Press, Inc.* (1969), 145 Ind. App. 20, 248 N. E. 2d 405; and, *State Board of Tax Commissioners* v. *Methodist Home for Aged* (1968), 143 Ind. App. 419, 241 N. E. 2d 84, did not nor do we now reflect unfavorably upon the rationale contained in cases which for policy reasons appear to restrict severely the scope of tax exemptions. We hold only that if such policy is to be implemented in the State of Indiana so as to exclude corporations for profit, which otherwise qualify for an exemption, it must be done by the General Assembly. The binding implementation of policy determinations made in a desire to improve or protect the public welfare are the sole and exclusive

prerogative of the legislative branch. *Freigy* v. *Gargaro Co., Inc.* (1945), 223 Ind. 342, 60 N. E. 2d 288; *Doyle et al.* v. *Clark et al.* (1942), 220 Ind. 271, 41 N. E. 2d 949.

We cannot better state the rationale of our holding here than to quote from the opinion in *National Colleges of Business* v. *Pennington County* (1966), 82 S. D. 391, 146 N. W. 2d 731:

"It is a matter of common knowledge that many of the subjects and much of the training provided by plaintiff is also provided in our tax supported institutions of higher learning and in some instances in our public high schools. To the extent that plaintiff's facilities are availed of, the state is relieved of its financial obligation to furnish such instruction. It seems to us that the statutory exemption from taxation provided for * * * is available to those private institutions which provide at least some substantial part of the educational training which would otherwise be furnished by our tax supported schools. [citation omitted] Accordingly, we hold that plaintiff is an educational institution within the meaning of our exemption statute.

"That it is a business college rather than an institution offering a general educational program does not bar it from the benefits of the statute. [citations omitted]

"* * * The benefit to the state is present whether the institution is operated for profit or not.

"The language of the exemption statute does not contain a qualification to that effect. To read such into it under the guise of construction would be a usurpation of the legislative function. [citation omitted] In this connection it should be noted that * * * the legislature in granting exemption to benevolent societies did require that they be operated 'without profit.'[4] * * *

"Generally, statutes exempting the property of educational institutions are included in or made a part of the statutory setup which includes the exemptions granted to charitable and benevolent groups. Some courts seize on this to hold, by construction, that the educational institutions intended to be aided by the statute must be of the same

---

[4] It may be similarly noted here that the controlling exemption statute at the time pertinent provided in Clause Eighth that the real and personal property of not-for-profit cemetery corporations was exempt, thereby taking explicit cognizance of the distinction between profit and not-for-profit corporations. See *Oak Hill Cemetery Co.* v. *Wells, supra.*

general character as charitable and benevolent organizations—that is, nonprofit in character. Typical of this view are *Behnke-Walker Business College* v. *Multnomah County,* 173 Or. 510, 146 P. 2d 614; *Lawrence Business College* v. *Bussing,* 117 Kan. 436, 231 P. 1039.

"However, under our statute, after it is determined that the institution involved is educational in character there is no room for further construction in this regard. Our legislature has taken care of the matter by directing that the exemption is available to 'any' educational institution. It did not see fit to add any limitations or qualifications on the availability of the exemption. Since there is no ambiguity in the language used there is no occasion for construction. [citation omitted]"

For the reasons herein stated we must therefore necessarily hold that the trial court properly ordered that an exemption be granted upon seventy-five percent of International's real estate and the improvements located thereon, which contain class rooms and administrative offices.

We further hold that the separate real estate and improvement thereon used as a resident dormitory for students at the college is also exempt. While the statute in this regard, being Burns' Indiana Statutes Anno., § 64-201 (Fourteenth), does not specifically exempt dormitory residences at colleges, except those owned by a church, the Fifth Clause of the same statute does specifically exempt "the campus and athletic grounds of any educational institution * * *."

Appellants argue under the maxim *expressio unium est exclusio alterius* that exclusive reference to church owned and operated dormitories in the exemption statute supports an inference that the General Assembly did not intend to exempt any other dormitory. The same argument was asserted by the appellants in *State Board of Tax Commissioners* v. *Wright* (1966), 139 Ind. App. 370 at 382, 215 N. E. 2d 57, and was rejected by the court as follows:

"* * *To us the 'Fifth' clause of said § 64-201, appearing to exclude every building used and set apart for religious purposes by any institution using it for such institu-

tion, is not thereafter limited in applicability by the 'Sixth' clause which specifically uses the word 'parsonage' * * *."

We similarly hold that the Fifth clause, which exempts every building used and set apart for educational purposes by any institution using it for such purposes, is not limited in applicability by clause Fourteenth of the Statute.

In *State Board of Tax Commissioners* v. *Indianapolis Lodge* (1964), 245 Ind. 614 at 620, 200 N. E. 2d 221, our Supreme Court acknowledged that, "while the test of the exemption is the use made of the property, the permissible uses must necessarily embrace all which are proper and appropriate to effect the objects of the institution, so that a use incident to the main purpose for which the property is held is not [fatal to the exemption.]" See also *State ex rel. Daggy* v. *Allen* (1920), 189 Ind. 369, 127 N. E. 145; *Chicago* v. *University of Chicago* (1907), 228 Ill. 605, 81 N. E. 1138.

The dormitory is necessary and is used exclusively to effectuate the educational purpose of the appellee college. Therefore, we hold International's dormitory to be exempt from real estate and personal property taxation for the year 1964.

The judgment of the court below is therefore affirmed.

Lowdermilk, P.J., Carson and Cooper, JJ., concur.

NOTE.—Reported in 251 N. E. 2d 39.